# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| 613 Agro Holdings, L.L.C. | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )<br>)<br>) |
| Lola M. Renick, as an individual and as the trustee of the Living Trust of Donald R. Renick; Michael R. Renick; Judy M. Renick; Mark A. Renick; Cheri M. Renick; Gary S. Renick; Dosha Renick; Janice K. Renick; Bruce G. Renick; Julie A. Walker; Duane W. Walker; XPO, LLC; and Best Farms, Inc. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 12-cv-2425 JAR/KMH<br>)<br>)<br>) |
| Defendants. | ) |

## COMPLAINT

For its Complaint against Defendants Lola M. Renick, as an individual and as the trustee of the Living Trust of Donald R. Renick; Michael R. Renick; Judy M. Renick; Mark A. Renick; Cheri M. Renick; Gary S. Renick; Dosha Renick; Janice K. Renick; Bruce G. Renick; Julie A. Walker; Duane W. Walker; XPO, LLC; and Best Farms, Inc., Plaintiff 613 Agro Holdings, LLC, states as follows:

## ALLEGATIONS COMMON TO ALL COUNTS

1.      At all relevant times, Plaintiff was a limited liability corporation with its members and managers residing in the State of New York.

2.      Defendant Lola M. Renick is an individual and the trustee of the Living Trust of Donald R. Renick residing in the State of Kansas.

3.      Defendants Michael R. Renick and Judy M. Renick are married individuals residing in the State of Kansas.

1

4. Defendants Mark A. Renick and Cheri M. Renick are married individuals residing in the State of Kansas.

5. Defendants Gary S. Renick and Dosha Renick are married individuals residing in the State of Kansas.

6. Defendant Janice K. Renick is an individual residing in the State of Kansas.

7. Defendant Bruce G. Renick is an individual residing in the State of Kansas.

8. Defendants Julie A. Walker and Duane W. Walker are married individuals residing in the State of Kansas.

9. Defendant Best Farms, Inc. is a corporation organized in 2004 under the laws of the State of Kansas with its principal place of business in the State of Kansas.

10. The above individual defendants will be collectively referred to as "The Don Renick Family."

11. Defendant XPO, LLC is a limited liability corporation organized in 2012 with its members and owners residing in the State of Kansas.

12. The amount in controversy in this action, exclusive of interest and costs, exceeds the sum of Seventy-Five Thousand Dollars ($75,000).

13. Jurisdiction is proper pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1446, because complete diversity of citizenship between Plaintiff and Defendants exists and because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000).

14. On or about October 26, 2010, The Don Renick Family held an auction for the sale of approximately 6,682 acres of real estate ("the Auction Sale") located in Southwest Kansas. In the written materials for the Auction Sale ("the Auction Materials"), delivered to Plaintiff before the Auction Sale and provided as an inducement for Plaintiff to participate in the

Auction Sale, The Don Renick Family promised to convey mineral rights to the real estate as described in Exhibit A to this Complaint.

15.   In Exhibit A, The Don Renick Family specifically represented that they owned the following mineral rights:

| Auction Tract | Total Acres | Mineral Rights % Owned |
|:---:|:---:|:---:|
| 1 | 699 | 50% |
| 2 | 803 | 50% |
| 3 | 13 | 50% |
| 4 | 2 | 50% |
| 5 | 579 | 50% |
| 6 | 480 | 100% |
| 7 | 320 | 100% |
| 8 | 320 | 100% |
| 9 | 160 | 100% |
| 10 | 513 | 100% |
| 11 | 480 | 50% |
| 12 | 153 | 50% |
| 13 | 295 | 50% |
| 14 | 130 | 50% |
| 15 | 325 | 50% |
| 16 | 300 | 50% |
| 17 | 40 | 50% |
| 18 | 6 | 50% |

| 19 | 26  | 50% |
|----|-----|-----|
| 20 | 95  | 50% |
| 21 | 151 | 50% |
| 22 | 215 | 50% |
| 23 | 12  | 50% |
| 24 | 5   | 50% |
| 25 | 320 | 0%  |
| 26 | 240 | 0%  |
| 27 | 4   | 50% |

16. Plaintiff relied upon the representations in Exhibit A.

17. The individual Defendants were known in the community and in the place where the sale took place as "The Don Renick Family"; and the Auction Materials identified the sellers as "The Don Renick Family."

18. The Don Renick Family induced Plaintiff to believe that Best Farms, Inc. actually held most of the Family's promised mineral rights by, among other things, representing in the Auction Materials that "[t]he majority of the real estate is held as a corporation."

19. On or about October 26, 2010, Plaintiff successfully bid $8,900,000 for the real estate and mineral rights advertised in the Auction Materials. Plaintiff executed an Agreement to Purchase Real Estate at Public Auction ("Purchase Agreement") that same day. A copy of the Purchase Agreement is attached as Exhibit B.

20. The Purchase Agreement required The Don Renick Family to convey the mineral rights that had been identified in Exhibit A and promised by The Don Renick Family.

4

21. The Purchase Agreement provides that its terms "shall survive the closing."

22. Plaintiff paid the purchase price of $8,900,000 to the sellers identified by The Don Renick Family. Plaintiff did so relying on representations made by The Don Renick Family that those sellers owned the mineral rights promised in the Auction Sale and in the Purchase Agreement.

23. On or about December 2, 2010, Best Farms, Inc. conveyed certain parcels of the real estate to Plaintiff by a Corporation General Warranty Deed ("Warranty Deed"). Pursuant to the Warranty Deed, Best Farms, Inc. warranted that it was "lawfully seized in its own right, of an absolute and indefeasible estate of inheritance, in fee simple, of and in all and singular the above granted and described premises, with the appurtenances" and that the real estate was "free, clear, discharged and unencumbered of and from all former and other grants, titles, charges, estates, judgments, taxes, assessments and encumbrances, of what nature or kind soever." A copy of the Warranty Deed is attached as Exhibit C.

24. Deeds for the remaining parcels were also issued by Mark A. Renick, by Cheri M. Renick, and by Lola M. Renick—both in her individual capacity and as trustee of the Living Trust of Donald R. Renick. Copies of the deeds for the remaining parcels are attached as Exhibit D.

25. In fact, The Don Renick Family knowingly failed to convey the promised mineral rights to Plaintiff.

26. In early 2012, The Don Renick Family formed XPO, LLC, and transferred to XPO, LLC all of its mineral rights in the real estate it had promised to convey to Plaintiff.

27. Upon information and belief, The Don Renick Family comprises the shareholders of XPO, LLC.

5146750 v1

28. On or about February 28, 2012, XPO, LLC leased to Paramount Land, Inc. the mineral rights The Don Renick Family had promised to convey to Plaintiff. XPO, LLC received substantial bonus payments for those leases, along with promises of future royalty payments.

29. On or about April of 2012, Plaintiff learned The Don Renick Family did not convey to Plaintiff the mineral rights promised in the Auction Materials, Purchase Agreement, Warranty Deed, and remaining deeds attached as Exhibit D. When it did, Plaintiff made a demand upon The Don Renick Family and the other defendants that they convey to Plaintiff the mineral rights promised in the Auction Sale and the Purchase Agreement, pay to Plaintiff the amount of the bonus payments paid by Paramount Land, Inc., and assign to Plaintiff the leases entered into with Paramount Land, Inc. Defendants rejected Plaintiff's demand.

## COUNT I
## BREACH OF CORPORATION GENERAL WARRANTY DEED/
## BREACH OF COVENANT OF SEISIN AGAINST BEST FARMS, INC.

30. Plaintiff incorporates herein by reference paragraphs 1 through 29 of this Complaint as if fully set forth herein.

31. The Warranty Deed granted by Best Farms, Inc. warrants that Best Farms, Inc. conveyed a "fee simple" interest in all of the real estate identified in the Warranty Deed.

32. A fee simple interest includes all of the surface rights and all of the mineral rights.

33. Best Farms, Inc. did not own and therefore did not convey the mineral rights promised in the Warranty Deed.

34. By failing to convey the mineral rights promised in the Warranty Deed, Best Farms, Inc. breached the Warranty Deed and breached, among other things, the covenant of seisin.

5146750 v1

35. As a direct result of Best Farms, Inc.'s breach of the Warranty Deed and breach of the covenant of seisin, Plaintiff was damaged in an amount exceeding $75,000.

WHEREFORE, Plaintiff prays for judgment against Best Farms, Inc., in an amount in excess of $75,000, for its costs, pre-judgment interest, litigation expenses and attorneys' fees, and for such additional relief as this Court believes just.

## COUNT II
## BREACH OF THE PURCHASE AGREEMENT AGAINST BEST FARMS, INC., LOLA M. RENICK, MARK A. RENICK, AND CHERI M. RENICK

36. Plaintiff incorporates herein by reference paragraphs 1 through 35 of this Complaint as if fully set forth herein.

37. On or about October 26, 2010, Plaintiff entered into a Purchase Agreement with Best Farms, Inc., Lola M. Renick, Mark A. Renick, and Cheri M. Renick.

38. Plaintiff fulfilled its obligations under the Purchase Agreement when it paid the purchase price.

39. The Purchase Agreement incorporates the mineral rights promised in the Auction Materials as follows: "Seller has represented in [auction] brochure mineral ownership interest to the best of their knowledge. However, no mineral search has been done and Seller warrants only they are selling 100% of their ownership in the mineral rights in real estate being sold."

40. The Purchase Agreement also requires Best Farms, Inc., Lola M. Renick, Mark A. Renick, and Cheri M. Renick to convey all of the mineral rights that they owned for all of the real estate purchased by Plaintiff.

41. In large part, the mineral rights promised in the Purchase Agreement and the Auction Materials were not conveyed to Plaintiff, if any were conveyed at all.

5146750 v1

42. Accordingly, Best Farms, Inc., Lola M. Renick, Mark A. Renick, and Cheri M. Renick breached the terms of the Purchase Agreement.

43. The Purchase Agreement provides that its terms "shall survive the closing."

44. As a direct result of the breach by Best Farms, Inc., Lola M. Renick, Mark A. Renick, and Cheri M. Renick, Plaintiff was damaged in an amount exceeding $75,000.

WHEREFORE, Plaintiff prays for judgment against Best Farms, Inc., Lola M. Renick, Mark A. Renick, and Cheri M. Renick in an amount in excess of $75,000, for its costs, pre-judgment interest, litigation expenses and attorneys' fees, and for such additional relief as this Court believes just.

## COUNT III
## BREACH OF THE AUCTION SALE AGREEMENT AGAINST THE DON RENICK FAMILY

45. Plaintiff incorporates herein by reference paragraphs 1 through 44 of this Complaint as if fully set forth herein.

46. In the Auction Sale, The Don Renick Family held themselves out as the owners of the real estate, and they provided detailed representations about the percentage of mineral rights they owned in each tract of land subject to the auction.

47. Plaintiff relied upon The Don Renick Family's representations when it offered $8,900,000 for the real estate, including the mineral rights The Don Renick Family said it owned.

48. Plaintiff fulfilled its obligations under the Auction Sale when it paid the purchase price.

49. The Don Renick Family breached the auction sale agreement because it did not convey the promised mineral rights.

8

50. As a direct result of The Don Renick Family's breach, Plaintiff was damaged in an amount exceeding $75,000.

WHEREFORE, Plaintiff prays for judgment against The Don Renick Family in an amount in excess of $75,000, for its costs, pre-judgment interest, litigation expenses and attorneys' fees, and for such additional relief as this Court believes just.

### COUNT IV
### FRAUD AGAINST THE DON RENICK FAMILY

51. Plaintiff incorporates herein by reference paragraphs 1 through 50 of this Complaint as if fully set forth herein.

52. In the Auction Materials, The Don Renick Family held itself out as the owners of the real estate, including the mineral rights, and it promised to convey all of the mineral rights it owned to the buyer.

53. In fact, The Don Renick Family did not convey the promised mineral rights and never intended to convey the promised mineral rights.

54. Instead, The Don Renick Family selected Best Farms, Inc. to convey most of the real estate and had Best Farms, Inc. give a Warranty Deed that purported to convey the mineral rights for most of the real estate.

55. But The Don Renick Family knew the Warranty Deed did not convey those mineral rights because it knew Best Farms, Inc. did not own the mineral rights.

56. The Don Renick Family induced Plaintiff to believe that Best Farms, Inc. actually held the most of the Family's promised mineral rights by, among other things, representing in the Auction Materials that "[t]he majority of the real estate is held as a corporation."

57. Plaintiff reasonably relied upon The Don Renick Family's representations in the Auction Materials and Purchase Agreement.

58. The Don Renick Family knowingly failed to transfer the mineral rights to Plaintiff, and it has since benefitted from its fraud by leasing the mineral rights to Paramount Land, Inc., and receiving bonus payments and other consideration for doing so.

59. As a direct result of The Don Renick Family's fraud, Plaintiff was damaged in an amount exceeding $75,000.

WHEREFORE, Plaintiff prays for judgment against The Don Renick Family in an amount in excess of $75,000, for its costs, pre-judgment interest, litigation expenses and attorneys' fees, punitive damages, and for such additional relief as this Court believes just.

## COUNT V
## REFORMATION OF THE PURCHASE AGREEMENT

60. Plaintiff incorporates herein by reference paragraphs 1 through 59 of this Complaint as if fully set forth herein.

61. On or about October 26, 2010, the Purchase Agreement was entered between Plaintiff as buyer and Lola M. Renick, Mark A. Renick, Cheri Renick, and Best Farms, Inc. as sellers.

62. Plaintiff fulfilled its obligations under the Purchase Agreement when it paid the purchase price.

63. Plaintiff entered into the Purchase Agreement based upon The Don Renick Family's representations that it would convey all of the mineral rights The Don Renick Family owned.

64. The Don Renick Family committed fraud by selecting Best Farms, Inc., Lola M. Renick, Mark A. Renick, and Cheri M. Renick to enter into the Purchase Agreement, when it knew they did not own all of the mineral rights that were promised.

65. Alternatively, The Don Renick Family mistakenly believed that Best Farms, Inc., Lola M. Renick, Mark A. Renick, and Cheri M. Renick owned all of the mineral rights promised in the Auctions Materials and Purchase Agreement, and The Don Renick Family intended to convey all of the same to Plaintiff as part of the sale.

66. The Purchase Agreement should be reformed to reflect the sale terms agreed to by Plaintiff and The Don Renick Family. Specifically, the Purchase Agreement should be reformed to include the entire Don Renick Family as sellers, and all other defendants as sellers, so that the promised mineral rights are in fact conveyed to Plaintiff.

67. Plaintiff does not have an adequate remedy at law.

WHEREFORE, Plaintiff prays that the Court reform the Purchase Agreement so it conveys all of the promised mineral rights to Plaintiff, order that Defendants issue warranty deeds to carry out the reformed Purchase Agreement, for its costs, for its litigation expenses and attorneys' fees, and for such additional relief the Court believes just.

## COUNT VI
## SPECIFIC PERFORMANCE

68. Plaintiff incorporates herein by reference paragraphs 1 through 67 of this Complaint as if fully set forth herein.

69. The Don Renick Family held themselves out as the sellers of the real estate and made detailed representations about the percentage of mineral rights they owned and would convey in each tract of land.

70. The Don Renick Family falsely represented its intention to convey the mineral rights.

71. At all relevant times, The Don Renick Family owned the mineral rights it promised to convey.

11

72. The Don Renick Family knowingly failed to transfer the mineral rights to Plaintiff.

73. On or about February 3, 2012, The Don Renick Family transferred all of its mineral rights to XPO, LLC.

74. Upon information and belief, The Don Renick Family comprises the shareholders of XPO, LLC.

75. Plaintiff is entitled to the promised mineral rights; but it does not have an adequate remedy at law by which to obtain them.

76. The Don Renick Family should be ordered to perform its promise to convey all mineral rights it owned at the time of the auction, including all of the mineral rights held by XPO, LLC.

77. Plaintiff therefore asks this Court to employ its equitable powers and order The Don Renick Family, XPO, LLC, and any and all other persons or entities controlled by The Don Renick Family who may have or may acquire any interest in the mineral rights, to convey those mineral rights to Plaintiff, to assign to Plaintiff all of their interests in any leases given to Paramount Land, Inc., and to pay to Plaintiff the amount of any bonus payments and any other consideration given by Paramount Land, Inc., for the lease of the minerals.

WHEREFORE, Plaintiff prays for a Decree of Specific Performance against The Don Renick Family, XPO, LLC, and any other persons or entities who should be made subject to the Decree, for its costs, for its litigation expenses and attorneys' fees, and for such additional relief as the Court believes just.

Dated: July 6, 2012

5146750 v1

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.


By: s/ Kristina L. Burmeister
William R. Sampson (KS #07418)
Kristina L. Burmeister (KS #78215)
2555 Grand Blvd.
Kansas City, Missouri  64108-2613
Telephone:  816.474.6550
Facsimile:  816.421.5547
Attorneys for Plaintiff

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas, as the place of trial.

5146750 v1