# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| 613 AGRO HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 12-2425-JAR-KMH |
| | ) | |
| LOLA M. RENICK, as an individual and as the trustee of the Living Trust of Donald R. Renick, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff 613 Agro Holdings, LLC alleges breach of contract and fraud claims under Kansas law against the following Defendants: Lola M. Renick; Michael R. Renick; Judy M. Renick; Mark A. Renick; Cheri M. Renick; Gary S. Renick; Dosha Renick; Janice K. Renick; Bruce G. Renick; Julie A. Walker; Duane W. Walker; XPO, LLC; and Best Farms, Inc. All Defendants answered the Complaint and then filed the following motions: (1) Motion to Dismiss for Failure to State a Claim (Doc. 30); and (2) Motion for Change of Venue, and in the Alternative, for Trial to be Held in the Wichita Division (Doc. 28). Plaintiff has filed a Motion to Strike the Reply in Response to the Motion to Dismiss (Doc. 45). These motions are fully briefed, and the Court is prepared to rule. As described more fully below, the Court grants in part and denies in part Defendants' motion to dismiss and denies the motion to strike as moot. The motion to dismiss is granted with respect to the contract claim in Count III, and denied on the fraud claim in Count IV and the contract remedy claims in Counts V and VI. The Court further denies the motion to change venue, but grants the alternative motion for trial to be held in

the Wichita Division.

**I.    Motion to Dismiss**

All Defendants have answered the Complaint.[1] The defense of failure to state a claim upon which relief can be granted "must be made before pleading if a responsive pleading is allowed."[2] Otherwise, the defense must be raised as a motion for judgment on the pleadings under Rule 12(c), which is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6).[3] The Court construes Defendants' motion as a motion for judgment on the pleadings.

Under Fed. R. Civ. P. 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to give the defendant adequate notice of what the plaintiff's claim is and the grounds of that claim.[4] In so doing, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[5] The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully,"[6] but it requires more than "a sheer possibility."[7] Thus, "a formulaic recitation of the elements of a cause of action," standing alone, is insufficient to survive a motion to

---

[1] Docs. 16–18.

[2] Fed. R. Civ. P. 12(b).

[3] *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003).

[4] *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

[5] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[6] *Id.* at 545.

[7] *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009).

dismiss.[8]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[9]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[10]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[11]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12]

### A. Facts

If the Court on a Rule 12(c) motion looks to matters outside the complaint, it generally must convert the motion to a Rule 56 motion for summary judgment.[13]  However, the Court may consider documents which are referred to in the complaint.[14]  Plaintiff filed three exhibits in support of the Complaint that are central to the claims in this case and referred to in the

---

[8]*Twombly*, 550 U.S. at 555.

[9]*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

[10]*Id.* at 679.

[11]*Id.*

[12]*Id.* at 678.

[13]Fed. R. Civ. P. 12(d).

[14]*See Alvardo v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quotation omitted); *GFF Corp. v. Associated Wholesale Grocers,* 130 F.3d 1381, 1384–85 (10th Cir. 1997).

Complaint: (1) the auction brochure; (2) the Purchase Agreement; and (3) the warranty deeds. The following facts are alleged in the Complaint (Doc. 1) or contained in the exhibits attached to the Complaint (Doc. 3). The factual allegations are taken in the light most favorable to Plaintiff.

On or about October 26, 2010, the sellers of approximately 6682 acres of real estate located in Southwest Kansas held an auction sale through their agent, Schrader Real Estate & Auction Company. In the written brochure for the auction sale, delivered to Plaintiff before the auction sale and provided as an inducement for Plaintiff to participate in the auction sale, "The Don Renick Family" promised to convey certain mineral rights along with the real estate. The brochure contains a grid that lists the percentage of mineral rights owned by The Don Renick Family for each of the 27 tracts included in the sale. The individually-named Defendants were known in the community and in the place where the sale took place as "The Don Renick Family"; and the auction brochure identified the seller as "The Don Renick Family." The brochure includes a section titled "Auction Terms & Conditions," with the following disclaimer: "All information contained in this brochure and all related materials are subject to the terms and conditions outlined in the purchase agreement."[15]

Plaintiff relied upon the representations in the brochure and successfully bid $8,900,000 for most of the real estate and mineral rights advertised in the brochure. The parties executed a Purchase Agreement that same day. The Purchase Agreement identifies the "Seller" as Best Farms, Inc., Lola Margaret Renick, Mark A. Renick, and Cheri M. Renick. The Purchase Agreement provides that the "Seller accepts [the $8,900,000] bid" for the real estate designated in the auction brochure as Tract(s) 1–21 and 27, containing 5892 acres, "together with all . . .

---

[15]Doc. 3, Ex. A at 3.

appurtenances pertaining thereto."

Paragraph 12 of the Purchase Agreement is an integration clause: "This contract contains the entire agreement of the parties and no representations, warranties or agreements have been made by either of the parties except as set forth in this Contract." The Purchase Agreement expressly incorporates two exhibits: an Auction Tract Map (Exhibit A), and Auction Announcements (Exhibit B). Exhibit B to the Purchase Agreement lists the owners of the real estate as Best Farms, Inc., Lola Margaret Renick, Mark A. Renick, and Cheri M. Renick. Exhibit B does not include the auction brochure. The Auction Announcements state, among other things, that (1) final bids "are subject to the Sellers' acceptance or rejection," (2) "Seller has represented in the brochure mineral ownership interest to best of their knowledge. However, no mineral search has been done and Seller warrants only they are selling 100% of their ownership in the mineral rights in real estate being sold," (3) "[t]he majority of the real estate is held as corporation," and (4) "[a]ll real estate is sold 'AS IS' without any warranty."[16]

The real estate sale closed on December 2, 2010. Members of the Don Renick Family knowingly failed to convey to Plaintiff the mineral rights set forth in the auction brochure. In early 2012, the Don Renick Family formed XPO, LLC, and transferred to XPO all of their mineral rights in the real estate sold to Plaintiff. In February 2012, XPO leased to Paramount Land, Inc., the mineral rights in the real estate sold to Plaintiff, receiving bonus payments for the leases, as well as future royalty payments. In April 2012, Plaintiff learned that the Don Renick Family did not convey to Plaintiff the mineral rights promised in the auction documents.

---

[16]Doc. 3, Ex. B, ex. B at 1–4.

B.  **Discussion**

Plaintiff brings claims for relief under the following counts in the Complaint: (I) Breach of Corporation General Warranty Deed/Breach of Covenant of Seisin against Best Farms, Inc.; (II) Breach of the Purchase Agreement against Best Farms, Inc. Lola M. Renick, Mark A. Renick, and Cheri M. Renick; (III) Breach of the Auction Sale Agreement against the Don Renick Family; (IV) Fraud against the Don Renick Family; (V) Reformation of the Purchase Agreement against the Don Renick Family; and (VI) Specific Performance of the Purchase Agreement against the Don Renick Family. Defendants move to dismiss Counts III and IV in their entirety, and to dismiss Counts V and VI as to all Defendants not named as sellers in the Purchase Agreement.

1.  **Count III, Breach of the Auction Agreement**

Defendants first move to dismiss Count III against "The Don Renick Family" on the following grounds: (1) there is no valid "Auction Agreement" because the Purchase Agreement is fully integrated; (2) any auction agreement violated the statute of frauds; (3) the Defendants not identified as sellers in the purchase agreement lack privity with Plaintiff so Plaintiff may not maintain a breach of contract action against them.

Because the Court agrees that Count III must be dismissed because the Purchase Agreement constitutes the entire agreement between the parties for the sale of the subject real estate, it need not reach Defendants' other arguments. Kansas courts have held that "[w]here contracting parties have carried out negotiations and have subsequently entered into an agreement in writing with respect to the subject matter covered by such negotiations, the written

agreement constitutes the contract between them and determines their rights."[17] The construction of a written contract is a question of law.[18] Generally, if the language in a written contract "is clear and can be carried out as written, there is no room for rules of construction."[19] "'In considering a contract which is unambiguous and whose language is not doubtful or obscure, words used therein are to be given their plain, general and common meaning, and a contract of this character is to be enforced according to its terms.'"[20]

The integration clause in the Purchase Agreement is clear and unambiguous that it represents the entire agreement of the parties for the sale of real estate. Because that agreement is fully integrated, Plaintiff may not, as a matter of law, maintain a separate contract action based on prior oral or written assurances that are not incorporated into the Purchase Agreement. Neither the alleged oral agreement made at the auction, nor the auction brochure itself, was incorporated into the Purchase Agreement.

In response to Defendants' motion, Plaintiff maintains that the auction bid constituted an offer, and that Defendants' acceptance of that bid formed a contract, separate and distinct from the Purchase Agreement. There are several problems with this argument. First, Plaintiff does not make these offer and acceptance allegations in the Complaint. But more importantly, the underlying documents that Plaintiff attaches to the Complaint belie this contention. The auction brochure states that the Purchase Agreement will control the terms of the sale. The Purchase

---

[17]*Albers v. Nelson*, 809 P.2d 1194, 1197 (Kan. 1991); *see also Time Warner Ent. Co. v. Everest Midwest Licensee, L.L.C.*, 381 F.3d 1039, 1044 (10th Cir. 2004).

[18]*See, e.g.*, *Ponds ex rel. Poole v. Hertz Corp.*, 158 P.3d 369, 372 (Kan. Ct. App. 2007).

[19]*Gore v. Beren*, 867 P.2d 330, 336 (Kan. 1994) (quotation omitted).

[20]*Wagnon v. Slawson Exploration Co.*, 874 P.2d 659, 666 (Kan. 1994) (quoting *Barnett v. Oliver*, 672 P.2d 1228, 1238 (Kan. Ct. App. 1993)) (internal quotation omitted).

Agreement also explicitly "accepts" Plaintiff's bid and was executed on the same day. And the Purchase Agreement incorporates the bidding announcement, which sets forth the bidding procedures, including that the buyer will be required at the end of the auction to execute a Purchase Agreement that was "available for your review in your Bidder's Packet," the terms of which "are non-negotiable." The Court finds that the Purchase Agreement, as a matter of law, was fully integrated and superseded any prior oral agreement. As such, Plaintiff may not bring a separate breach of contract claim based on an "Auction Agreement." Instead, it may pursue a contract remedy for breach of the Purchase Agreement. Defendants' motion for judgment on the pleadings is granted as to Count III.

At the end of its response, Plaintiff requests leave to amend if "the Court find[s] merit to Defendants' arguments." Yet, Plaintiff neither filed a motion for leave to amend under Fed. R. Civ. P. 15, nor offered notice of the basis for the proposed amendment.[21] The Court has determined that Plaintiff's claim for breach of an "Auction Agreement" fails as a matter of law based on the plain language of the Purchase Agreement, which Plaintiff attached to the Complaint. Accordingly, the Court finds no grounds upon which an amendment to the Complaint would salvage this claim and denies Plaintiff's request to file a motion for leave to amend.

### B. Fraud, Count IV

In its fraud claim, Plaintiff alleges that all Defendants held themselves out as owning the mineral rights set forth in the auction brochure, promised to convey those mineral rights, and then knowingly failed to convey those mineral rights in the Purchase Agreement and warranty

---

[21]*See Calderon v. Kan. Dept. of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186–87 (10th Cir. 1999); *Berneike v. CitiMortgage, Inc.*, –F.3d–, 11-4210, 2013 WL 657032 (10th Cir. Feb. 25, 2013).

deeds. To show fraud under Kansas law, Plaintiff must establish: (1) an untrue statement of fact; (2) known to be untrue by the party making it; (3) made with the intent to deceive or with reckless disregard for the truth; (4) upon which another party justifiably relies; and (5) acts to his detriment.[22] Under Fed. R. Civ. P. 9, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[23] The rule's purpose is to provide the defendant fair and adequate notice of the claim and to allow the defendant to respond on an informed basis.[24] A fraud claim requires "the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."[25]

Defendants first argue that Count IV should be dismissed in its entirety because the Complaint fails to allege that the non-contracting Defendants made the alleged promise or representation in the auction brochure regarding mineral rights. But Plaintiff alleges that all of the individual Defendants, holding themselves out as members of the Don Renick Family at the auction, misrepresented the mineral rights that would be included in the sale. Plaintiff alleges that it was understood that the Don Renick Family was comprised of all members of the family, not just the sellers listed in the Purchase Agreement. Plaintiff further alleges that the Don Renick Family represented that the "sellers" of the real estate held the mineral rights set forth in the auction brochure, when in fact, the sellers did not hold such rights, non-contracting members

---

[22]*E.g., Alires v. McGehee*, 85 P.3d 1191, 1195 (Kan. 2004); *Crandall v. Grbic*, 138 P.3d 365, 375 (Kan. Ct. App. 2006).

[23]Fed. R. Civ. P. 9(b).

[24]*Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992).

[25]*Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006) (citing *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000)) (quoting *Lawrence Nat'l Bank v. Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991)).

of the Don Renick family did.

Defendants suggest that they may not be liable for any representation in the auction materials because the auctioneer prepared those materials. But the Complaint alleges that the auctioneer was an agent of the Defendants, and that any statements prepared by their agent may bind the Defendants.[26] The Court must accept these allegations as true for purposes of deciding Defendants' motion.

Defendants next argue that Plaintiff fails to allege an actionable misrepresentation surrounding the Purchase Agreement, which governs Defendants' tort duties to Plaintiff. But the fraud claim is that Plaintiff was fraudulently induced to enter into the Purchase Agreement. A fraudulent inducement claim "constitutes a tort independent of a claim for breach of the same contract."[27] To be actionable, the fraud must "relate to a pre-existing or present fact; statements or promises about future occurrences are not actionable."[28] Assuming the facts alleged are true, and drawing all reasonable inferences in favor of Plaintiff, Plaintiff alleges that the sellers misrepresented their present ownership interests in the auction brochure grid, and that they misrepresented that the sale would include the family members' conveyance of those rights along with the real estate. Plaintiff alleges that these representations were made in order to induce Plaintiff to bid on the real estate and ultimately enter into the Purchase Agreement. The Complaint further alleges that the sellers intentionally failed to name all mineral rights-holders as sellers in the Purchase Agreement in order to avoid conveying all of the mineral rights

---

[26] *See Saxon Mortg., Inc. v. Mortg. Plus, Inc.*, 130 F. Supp. 2d 1236, 1248 (D. Kan. 2001).

[27] *Horizon Holdings, LLC v. Genmar Holdings, Inc.*, 241 F. Supp. 2d 1123, 1151 (D. Kan. 2002).

[28] *Flight Concepts Ltd. P'ship v. Boeing Co.*, 38 F.3d 1152, 1157 (10th Cir. 1994).

associated with that real estate to Plaintiff.

Defendants point to various sections of the Purchase Agreement and auction materials that purportedly disclaim any previous promise to convey the mineral rights set forth in the auction brochure, but the Court finds that this is a factual question inappropriate for resolution at the pleading stage. While the Purchase Agreement supersedes any prior negotiation or oral agreement (e.g., an Auction Agreement) with respect to the real estate contract, the parol evidence rule does not apply to a claim of fraud in the inducement, even where the contract is fully integrated.[29] The facts alleged in Count IV are sufficient to state a claim for fraud in the inducement and thus Defendants' motion to dismiss that claim is denied. Because the Court has considered Defendants' arguments on this claim, including the arguments that are the subject of Plaintiff's Motion to Strike Reply, that motion is denied as moot.

## C. Counts V and VI, Reformation and Specific Performance of the Purchase Agreement

Plaintiff also seeks equitable contract remedies for breach of the Purchase Agreement in Counts V and VI against the Don Renick Family, not just those named as sellers in the Purchase Agreement. Because they are not named in the contract, these non-contracting Defendants move for judgment on the pleadings on the reformation and specific performance claims.

When "either through the mutual mistake of the parties, or through a mistake of one accompanied by a fraudulent knowledge and procurement of the other, the written instrument fails to express the real agreement or transaction, equity may grant reformation."[30] Here, the

---

[29]*Miles Excavating, Inc. v. Rutledge Backhoe & Septic Tank Servs., Inc.*, 927 P.2d 517, 518 (Kan. Ct. App. 1996).

[30]*Russell v. Shell Petroleum Corp.*, 66 F.2d 864, 866 (10th Cir. 1933).

11

Complaint alleges that both grounds for reformation are present. Count V alleges that "The Don Renick Family" committed fraud when it selected Best Farms, and Lola, Mark, and Cheri Renick to enter into the Purchase Agreement, knowing that those parties did not own all the mineral rights represented in the auction materials. The Complaint alleges in the alternative that Plaintiff mistakenly believed that the Defendants named as parties in the contract owned all of the mineral rights represented in the auction materials.

Defendants maintain that the contract cannot be reformed to add parties who were not originally named. Plaintiff responds that the Court has broad powers in equity to reform the contract based on fraud or mistake. It argues that the entire family promised to convey all of the mineral rights they owned, so if any of the mineral rights holders are not parties to the contract, the contract should be reformed to include them. The Court finds that it is premature to dismiss the reformation claim against the non-contracting Defendants at this time. Plaintiff alleges in Count IV that all Defendants fraudulently induced the Purchase Agreement by assuring Plaintiff that the sale would include certain mineral interests, and then intentionally failed to name all mineral rights holders as sellers. If Plaintiff is able to establish the fraud claim, reformation may be an appropriate remedy.

Plaintiff argues that if the Court reforms the Purchase Agreement to add the non-contracting Defendants, it may then order specific performance as to all the reformed sellers. Again, the Court finds that the motion to dismiss these remedy claims against the non-contracting Defendants is premature. Specific performance is not appropriate "where there is an adequate remedy at law."[31] The Court is not in a position at the pleading stage to determine

---

[31] *Miller v. Alexander*, 775 P.2d 198, 204 (Kan. Ct. App. 1989).

whether an adequate remedy at law exists, assuming that Plaintiff can establish its breach of contract or fraud claims. At this stage, however, Plaintiff has sufficiently alleged a fraud in the inducement claim against the non-contracting Defendants, that could plausibly give rise to equitable remedies.[32] Therefore, the motion for judgment on the pleadings is denied as to Counts V and VI.

**II.     Motion to Change Venue**

Defendants move for an intra-district change of venue from the Kansas City Division to the Wichita Division. Alternatively, Defendants ask that the case be set for trial in the Wichita Division. The District of Kansas has a district-wide civil draw for its active judges, so the Court will not grant Defendants' request to transfer the case itself to the Wichita Division—Defendants are just as likely upon "transfer" to draw a Kansas City judge as when the case was initially filed. In this district, most pretrial proceedings are conducted by phone, and pretrial motions in civil cases are rarely called for hearing. Instead, the Court considers Defendants' alternative request that the trial be set in the Wichita Division.

In their pleadings, Plaintiff requested Kansas City and Defendants all requested Wichita as the place of trial. Under D. Kan. R. 40.2: "The court shall not be bound by the requests for place of trial but may, upon motion by a party, or in its discretion determine the place of trial." In this district, when considering a motion for intra-district transfer, courts look to the same factors relevant for change of venue under 28 U.S.C. § 1404.[33] Under a § 1404(a) analysis, a

---

[32]*Id.* ("Whether equity will decree the specific performance of a contract rests in sound judicial discretion and always depends on the facts of the particular case." (quoting *Wilcox v. Wyandotte World-Wide, Inc.*, 493 P.2d 251, 251 (Kan. 1972))).

[33]*See, e.g.*, *Menefee v. Zepick*, No. 09-2127-JWL, 2009 WL 1313236, at *1 (D. Kan. May 12, 2009); *Benson v. Hawker Beechcraft Corp.*, No. 07-2171-JWL, 2007 WL 1834010, at *1 (D. Kan. June 26, 2007).

13

district court should consider the plaintiff's choice of forum, the convenience for witnesses, the accessibility of witnesses and other sources of proof, the possibility of obtaining a fair trial, difficulties that may arise from congested dockets, and "all other considerations of a practical nature that make a trial easy, expeditious and economical."[34] The burden of proving that the existing forum is inconvenient lies with the moving party.[35] Although a plaintiff's forum choice "should rarely be disturbed,"[36] the plaintiff's choice of forum receives little deference when, as here, the plaintiff does not reside there.[37]

The parties focus on the convenience factors. Defendants urge that Kansas City is an inconvenient forum for most of the witnesses that are expected to testify, as well as for the parties. Plaintiff argues that most of the witnesses and parties must travel for trial anyway, so Kansas City is more convenient because it has an international airport. The parties are in the midst of discovery and have set forth in their briefs the names and locations of several potential witnesses. Defendants identified five non-party witnesses located in Wichita, who they intend to call at trial. They also identified two non-party witnesses, as well as seven of the individual Defendants located in Cimarron, Kansas. It is an approximately seven-hour drive from the Gray County area where Cimarron is located, to the Kansas City Division. While these parties and witnesses will obviously have to travel some distance to Wichita, it is a much shorter distance than Kansas City. Defendants point out that one of the individual defendants is 83 years old and

---

[34]*Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1515–16 (10th Cir. 1991) (citing *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1957)).

[35]*Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992) (citing *Chrysler Credit Corp.*, 928 F.2d at 1515).

[36]*Id.*

[37]*Benson*, 2007 WL 1834010, at *2; *see also Menefee*, 2009 WL 1313236, at *1.

14

has difficulty with extended travel; three of the individual Defendants own businesses in the Gray County area and would be prevented from maintaining farming operations and businesses during the trial if forced to travel to Kansas City.

Plaintiff points to six individuals Defendants noticed for deposition who reside on the East Coast, but it is unclear that all six of these individuals are potential witnesses since they are all Plaintiff's representatives. The likelihood of them all being called at trial is minimal. Plaintiff also points to the auctioneer representatives, who are located in Indiana, and to the individual Defendants who reside in Minnesota and Arkansas. But Defendants maintain that convenience to the out-of-state Defendants is neutral—the Minnesota Defendants will fly to either trial location and it is a mere 45-mile difference in distance for the Arkansas Defendants to travel to Wichita versus Kansas City. Moreover, Defendants point to the auctioneer's prior work in Kansas as evidence that the burden is not great for those witnesses.

The Court finds that the convenience factors, while a close call, weigh in favor of holding the trial in the Wichita Division. While this case is still in the early stages of discovery, the Court finds that there are more potential witnesses who would be substantially inconvenienced by traveling to Kansas City for trial compared to Wichita. And Defendants have also pointed to substantial inconvenience for several of the individual Defendants. In contrast, Plaintiff points to witnesses and parties who must travel from out of state; there appear to be no witnesses based in Kansas City. Those out-of-state parties may just as easily fly into Wichita as Kansas City. All other relevant § 1404 factors are either neutral or not at issue in this case.

In sum, given that there is virtually no nexus between this case and the chosen forum of Kansas City, Defendants have sustained their burden of showing that it would be inconvenient to

the witnesses and most of the parties for trial to be held there. The Court therefore grants Defendants' motion to hold the trial in Wichita.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss for Failure to State a Claim (Doc. 30), which the Court construes as a motion for judgment on the pleadings, is **granted in part and denied in part**. The motion is granted on Count III and otherwise denied.

**IT IS FURTHER ORDERED** that Defendants' Motion for Change of Venue, and in the Alternative, for Trial to be Held in the Wichita Division (Doc. 28) is **granted in part and denied in part**. The motion to change venue is denied and the motion for trial to be held in the Wichita Division is granted.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike the Reply in Response to the Motion to Dismiss (Doc. 45) is **denied as moot**.

Dated: March 14, 2013

                                                                      S/ Julie A. Robinson
                                                                      JULIE A. ROBINSON
                                                                      UNITED STATES DISTRICT JUDGE